

**Dated: December 22, 2016.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-10096-HCM |
| XTREME POWER INC., et al., | § | (Chapter 11) |
|     Debtors. | § | |
| | § | |
| | § | |
| XTREME POWER PLAN TRUST, by and | § | |
| through Angelo DeCaro, Jr., Trustee | § | |
|     Plaintiff, | § | |
| v. | § | ADVERSARY NO. 16-01004-HCM |
| | § | |
| WALTER SCHINDLER; H. HENRY | § | |
| HABICHT; LEE TASHJIAN; ALAN | § | |
| GOTCHER; UMESH PADVAL; PAT | § | |
| WOOD III; FOSTER DUNCAN; and | § | |
| SAIL CAPITAL PARTNERS, LLC, | § | |
|     Defendants. | § | |

### OPINION REGARDING MOTIONS TO DISMISS AMENDED COMPLAINT

This type of lawsuit has become somewhat commonplace—directors of a now

defunct corporation are sued for breach of fiduciary duties. Here, the parties are

currently "Frozen" [1] in battle—as the Defendants filed motions to dismiss under Rule

_____
[1] FROZEN (Walt Disney Pictures 2013).

1

12(b)(6), echoing "Indina Menzel" to demand that the Plaintiff just "let it go." For the most part, the Court agrees with the Defendants and will send all but a single claim to a wintery grave.

## I.
## PROCEDURAL BACKGROUND

### A. Bankruptcy Case

On January 22, 2014, Xtreme Power Inc., as debtor ("Xtreme"), filed a voluntary Chapter 11 petition in this Court in case no. 14-10096. *See* Voluntary Petition (case no. 14-10096, dkt# 1). The Chapter 11 case of Xtreme was then jointly administered with the Chapter 11 cases of two of its subsidiaries—Xtreme Power Systems, LLC (case no. 14-10095) and Xtreme Power Grove, LLC (case no. 14-10097). *See* Order Granting Motion for Joint Administration (case no. 14-10096, dkt# 27).

Within days of its bankruptcy filing, Xtreme requested the Court approve procedures that would allow for the sale of substantially all assets under 11 U.S.C. § 363. After several hearings, the Court approved the bid procedures and ultimately approved the sale by Order dated April 11, 2014 (case no. 14-10096, dkt# 157, 535).

Following the sale, Xtreme and its two subsidiaries filed a Second Amended Joint Chapter 11 Plan of Liquidation ("Second Amended Plan") (case no. 14-10096, dkt# 897). In accordance with the terms of a Mediated Settlement Agreement dated September 29, 2014, the Second Amended Plan created a Plan Trust to pursue Xtreme's remaining causes of action for the benefit of creditors. *See* Second Amended Plan ¶¶ 6.01–6.07 (case no. 14-10096, dkt# 897).

The Second Amended Plan also named a Plan Trustee (Plaintiff in this adversary proceeding) with the authority and standing to pursue, among other actions, any

litigation claim relating to alleged misconduct of the officers and directors of Xtreme ("D&O Litigation"). *See* Second Amended Plan ¶¶ 1.29, 6.01, 6.03 (case no. 14-10096, dkt# 897). To aid in the prosecution of claims, the Second Amended Plan required Xtreme and its subsidiaries to deliver all books and records to the Plan Trustee for use in litigation. *See* Second Amended Plan § 6.07 (case no. 14-10096, dkt# 897).

The Court confirmed the Second Amended Plan on February 11, 2015. The Second Amended Plan became effective on February 26, 2015. *See* Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Plan (case no. 14-10096, dkt# 944, p. 19); Notice of (I) Entry of Order Confirming Plan; (II) Occurrence of Effective Date; and (III) Certain Deadlines Related Thereto (case no. 14-10096, dkt# 950, p. 1).

## B. Adversary Proceeding

### 1. Original Complaint and Parties

The Plan Trustee, as Plaintiff ("Plaintiff Trust") then commenced this adversary proceeding no. 16-01004 on January 19, 2016, with the filing of Plaintiff's Original Complaint ("Original Complaint"). *See* Original Complaint (dkt# 1).

The Complaint named all seven of the former members of Xtreme's Board of Directors ("Director Defendants") as well SAIL Capital Partners, LLC ("SAIL," collectively referred to along with the Director Defendants as the "Defendants") as Defendants in this adversary proceeding. The seven board members that are sued individually as Director Defendants are: Walter Schindler ("Director Schindler"), H. Henry Habicht ("Director Habicht"), Foster Duncan ("Director Duncan"), Alan Gotcher ("Director Gotcher"), Lee Tashjian ("Director Tashjian"), Umesh Padval ("Director Padval"), and

Pat Wood III ("Director Wood"). SAIL was also sued in its capacity as a shareholder of Xtreme. *See* Original Complaint (dkt# 1).

Twice, all parties by joint stipulation agreed to extend the time by which the Defendants were required to answer or otherwise respond to the Original Complaint. *See* Stipulations (dkt# 18, 24). As a result, Defendants made no answer or other response to the Original Complaint for several months.

### 2. Original Motions to Dismiss

On April 18, 2016, the Defendants responded to the Complaint by filing Motions to Dismiss. *See* SAIL Motion to Dismiss (dkt# 27); Director Defendants Motion to Dismiss (dkt# 29) (collectively, the "Original Motions").

The Original Motions attacked the factual and legal sufficiency of the Original Complaint, arguing that the Plaintiff Trust failed to allege any facts to rebut the business judgment rule or to establish breaches of the duties of care, loyalty, or good faith by any of the Defendants. The Original Motions also complained about the lack of facts included to support the Plaintiff Trust's allegations of alter ego, agency, aiding and abetting, and civil conspiracy. Finally, the Original Motions asserted that both an exculpatory provision in Xtreme's Certificate of Incorporation and provisions related to the D&O litigation contained in the confirmed Second Amended Plan precluded the recovery sought by the Plaintiff Trust. *See* SAIL Motion to Dismiss, pp. 7–20 (dkt# 27); Director Defendants Motion to Dismiss, pp. 4–18 (dkt# 29).

In response, the Plaintiff Trust moved for leave of the Court to file an Amended Complaint. *See* Motion for Leave to File Amended Complaint (dkt# 41). In its request, the Plaintiff Trust acknowledged the Defendants' criticisms regarding the sufficiency of

facts pled. Out of what it stated was "an abundance of caution and in order to expedite these proceedings," the Plaintiff Trust then asked leave of the Court to address the concerns raised by the Original Motions. *See* Motion for Leave to File Amended Complaint, p. 2 (dkt# 41). The Court then granted the Plaintiff Trust leave to file and serve its amended complaint. *See* Order Granting Motion for Leave to File an Amended Complaint (dkt# 45).

### 3. Plaintiff Trust's Amended Complaint

The Plaintiff Trust then filed its Amended Complaint in this adversary proceeding on May 31, 2016. *See* Plaintiff's Amended Complaint ("Amended Complaint") (dkt# 46). As before, the Amended Complaint asserted various causes of action against the Defendants, including breach of fiduciary duties, aiding and abetting, and civil conspiracy. *See* Amended Complaint ¶¶ 47–58. Additionally, as in the Original Complaint, the Amended Complaint contained several miscellaneous allegations, such as inapplicability of the business judgment rule, alter ego, and agency. *See* Amended Complaint ¶¶ 59–61.

Substantively, the Amended Complaint did little to address the deficiencies raised by the Defendants in their Original Motions to dismiss. In sum, the Amended Complaint added one new fact relating to SAIL's investment in Xtreme, expanded on the roles and connections of the Director Defendants, and stated five alleged misrepresentations made by SAIL to SAIL's investors. *See* Amended Complaint ¶¶ 27, 28, 43. Additionally, the Amended Complaint asserted an additional claim against SAIL—breach of the fiduciary duty owed by a controlling shareholder. *See* Amended

5

Complaint ¶ 55. The Amended Complaint made no other efforts to address the supposed pleading deficiencies complained of in the Original Motions.

### 4. Renewed Motions to Dismiss

In light of the Amended Complaint, the Court directed the Defendants to either file new Motions to Dismiss directed at the Amended Complaint or to file Answers to the Amended Complaint by June 23, 2016. *See* Order Regarding Pending Motions to Dismiss Original Complaint and Setting Procedures and Deadlines (dkt# 47). As expected, both the Director Defendants and SAIL filed renewed Motions to Dismiss targeting the Amended Complaint.

The Director Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint ("Directors Motion") (dkt# 53) on June 23, 2016. The Plaintiff Trust filed a Response to the Directors Motion ("Response to Directors") (dkt# 55) on July 14, 2016, and the Director Defendants filed a Reply (dkt# 57) on July 21, 2016.

SAIL also filed the instant Motion to Dismiss Plaintiff's Amended Complaint ("SAIL Motion") (dkt# 52), with three exhibits in support, on June 23, 2016. The Plaintiff Trust filed a Response to the SAIL Motion ("Response to SAIL") (dkt# 54) on July 14, 2016, and SAIL filed a Reply ("SAIL Reply") (dkt# 56) on July 21, 2016.

As before, both the Directors Motion and the SAIL Motion sought dismissal under Rule 12(b)(6) for failure by the Plaintiff Trust to state a claim. Additionally, as before, both the Directors Motion and the SAIL Motion challenged the Plaintiff Trust's right to relief in light of the business judgment rule and the exculpatory provision contained in Xtreme's Certificate of Incorporation. *See* Directors Motion, pp. 5–20; SAIL Motion, pp. 4–20.

### 5.  Hearing

On October 27, 2016, the Court conducted a hearing on the Directors Motion, the SAIL Motion, and the Responses and Replies thereto. Counsel for the Plaintiff Trust, counsel for the Director Defendants, and counsel for SAIL appeared at the hearing and presented oral arguments to the Court. After considering the Amended Complaint and analyzing it under the standards of Rule 12(b)(6), this Opinion constitutes the Court's ruling on the Directors Motion and the SAIL Motion.

**II.**
**SUMMARY OF THE PLAINTIFF TRUST'S AMENDED COMPLAINT**

The Plaintiff Trust's Amended Complaint paints the devolution of Xtreme—from the promising, spring-like start-up of the company to its chilling, wintry demise in bankruptcy. The Amended Complaint itself spans nineteen pages with sixty-seven paragraphs and sets forth two counts ("Counts") against the Defendants. *See generally* Amended Complaint. Following is a brief summary of the primary allegations made by the Plaintiff Trust in the Amended Complaint.

### A.  Factual Allegations

The Amended Complaint alleges that Xtreme began in November 2006 for the purpose of designing, installing, and monitoring energy storage and power management systems. Although a Delaware corporation, the company was headquartered in Texas and maintained operations throughout the United States, with the overall objective of becoming a leader in the energy storage industry. From 2009 to 2011, Xtreme allegedly experienced rapid growth, earning it a spot on Inc. Magazine's list of fastest growing private companies in the United States and leading to valuations in excess of $100 million. *See* Amended Complaint ¶¶ 20–24.

Unfortunately, these successes did not last long. As alleged in the Amended Complaint, between year-end 2011 and 2012 "sales declined some 20%, and the balance sheet equity declined by $21 million—to a negative $36 million of net worth." *See* Amended Complaint ¶ 32. Additionally, it is alleged in August 2012 that a fire broke out at a wind farm in Hawaii, leading to the complete destruction of the facility's building and energy storage system and a blizzard of negative publicity. By this point, Xtreme had allegedly slid into insolvency as measured under any test. *See* Amended Complaint ¶¶ 32–33. Specifically, Xtreme's financial statements allegedly showed a significant negative worth in 2012, along with an operating loss of $5.5 million and a gross loss of over $38 million. The following year the company fared no better, with the first three quarters of 2013 reporting total revenue below $2.5 million. *See* Amended Complaint ¶¶ 34–35.

The Amended Complaint alleges that at this point any competent observer would have realized that immediate action was necessary by Xtreme's Board of Directors to correct the company's dire situation. In support of this allegation, the Amended Complaint recounts that in November 2012 Langara Capital Partners ("Langara"), a shareholder of Xtreme, formally presented its concerns to the Board. *See* Amended Complaint ¶ 36. Namely, Langara allegedly expressed concerns about (1) the decrease in customer bookings; (2) the difficulty of future financings; (3) the company's focus on building resources, research, and development rather than sales; (4) the lack of cash on the balance sheet; and (5) the lack of investor interest in the company. The presentation ended with Langara's demand to "(a) [b]ring the burn rate down to a truly negligible

amount; and (b) [s]tart the restructuring, 'liquidation process NOW' or have 'little to no liquidation value in bankruptcy.'" *See* Amended Complaint ¶¶ 37–38.

According to the Amended Complaint, the Director Defendants failed to heed Langara's request or to engage in any efforts to slow the avalanche-like slide into fiscal ruin. Rather, the Director Defendants allegedly delayed filing bankruptcy until January 2014, at which point Xtreme had purportedly ran out of cash and decreased in value to only $14 million. *See* Amended Complaint ¶¶ 2, 39. Although bereft of pled facts relating to direction by or conspiracy with SAIL, the Amended Complaint then states that the Director Defendants purposefully acted in this wasteful manner to protect SAIL's funds from also declining in value. Allegedly, Xtreme made up over 30% of SAIL's investments and a decrease in the value of Xtreme would correspondingly result in a decrease in the net value of the SAIL funds as a whole. *See* Amended Complaint ¶ 43.

Finally, the Amended Complaint states that the Director Defendants placed SAIL's needs ahead of those of Xtreme due to various relationships between individual directors and SAIL. For example, allegedly Director Schindler, who served as the chairman of Xtreme's Board, also acted as a managing partner of SAIL, where he co-managed investments and operations. Director Habicht also allegedly served as a managing partner of both SAIL and a SAIL subsidiary. Director Duncan allegedly managed a smaller SAIL fund that began making investments in 2011 and early 2012, around the same time as Xtreme's decline. Director Tashjian allegedly sat on the SAIL advisory board and acted as the director of an unrelated company also within the SAIL portfolio. Director Gotcher, who also acted as the President of Xtreme, had no direct connection to SAIL. He was, however, alleged to be effectively controlled by SAIL

through the actions of Directors Schindler and Habicht, two members of a three-person compensation committee that determined the salaries of officer positions. Finally, Directors Padval and Wood acted as independent directors, with no alleged connections to or interests in SAIL. *See* Amended Complaint ¶ 28.

## B. Causes of Action

The Plaintiff Trust's Amended Complaint sets forth multiple state law causes of action against the Defendants in just two separate Counts. Additionally, the Amended Complaint raises three miscellaneous legal theories relating to the Plaintiff Trust's entitlement to relief under the Counts.

Count 1 of the Amended Complaint is against all of the Defendants and is based on an alleged breach of fiduciary duty owed to Xtreme by the Defendants (including the duties of loyalty, good faith, and care). This Count additionally alleges that the Defendants acted with gross negligence in carrying out the duties owed to Xtreme. Finally, Count 1 asserts an "inducing and/or aiding and abetting breach of fiduciary duty" claim against SAIL relating to the alleged breaches of fiduciary duty complained of in the same Count. *See* Amended Complaint ¶¶ 50–55.

Count 2 of the Amended Complaint also runs against all of the Defendants. It asserts a claim of civil conspiracy, wherein the Plaintiff alleges that Defendants conspired to cause the alleged breaches of fiduciary duties that form the basis of Count 1. *See* Amended Complaint ¶¶ 56–58.

Under the miscellaneous header, the Amended Complaint also pays lip service to three legal theories. First, the Amended Complaint declares that the entire fairness standard, rather than the more deferential business judgment rule, applies to the

transactions at issue. Second, the Amended Complaint states, without more, that SAIL and Directors Schindler, Habicht, Duncan, Tashjian, and Gotcher acted at all material times as alter egos of one another. Finally, the Amended Complaint includes a single paragraph labeled "agency," where it asserts that the act or omission of any defendant entity "was engaged in by its officers, agents or other persons having authority to engage in such conduct" and that such defendant entity will thus be liable for the acts of its agents. *See* Amended Complaint ¶¶ 59–61.

In an effort to support its claims, the Plaintiff Trust set forth a variety of factual assertions in its Amended Complaint. In sum, those assertions are that the Defendants (1) failed to take actions requested by a shareholder, such as starting the liquidation process in bankruptcy at an earlier date; (2) increased the time period that Xtreme remained out of bankruptcy so that SAIL could drive up investments in SAIL's various funds; (3) misrepresented the true nature of Xtreme's financial situation to SAIL's third-party investors; and (4) caused Xtreme to lose nearly all its liquidation value before finally filing for Chapter 11 relief. *See* Amended Complaint ¶¶ 36–44. Regarding application of the business judgment rule, the Plaintiff Trust additionally contends that five of the seven Director Defendants lacked impartiality during all relevant times due to affiliations with or connections to SAIL or a SAIL-related entity. *See* Amended Complaint ¶¶ 28, 59.

### III.
### LEGAL STANDARD AND EVIDENCE IN A RULE 12(b)(6) MOTION

#### A. Standard for Motion to Dismiss

All of the Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules").[2] Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."

In evaluating a complaint under Rule 12(b)(6), a court examines whether the pleading states a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A plausible claim arises when the complaint pleads sufficient facts to allow a court to draw a "reasonable inference" of the opposing party's liability for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Such inferences are context-specific and require the "reviewing court to draw on its experience and common sense" when making a determination. *Iqbal*, 556 U.S. at 663–64. Although the standard rejects the equation of plausibility with probability, the complaint must contain more than just a "sheer possibility" of unlawful action to survive. *Iqbal*, 556 U.S. at 678.

In determining plausibility, a court accepts all well-pled facts in a complaint as true and views those facts in the "light most favorable to the plaintiff." *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations omitted). Threadbare recitals of the elements of a cause of action or mere conclusory statements, on the other hand, will not save the complaint from a motion to dismiss. *See Iqbal*, 556 U.S. at

---

[2] Rule 12 is incorporated into adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

678. Similarly, a court should not give legal conclusions couched as factual allegations any weight. *See Iqbal*, 556 U.S. at 678; *Papsan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986). Thus, while recognizing that a motion to dismiss is "viewed with disfavor and is rarely granted," a court will only liberally construe those statements constituting actual well-pled facts in favor of the plaintiff. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### B. Four Corners Rule and Extrinsic Evidence

When ruling on a motion to dismiss under Rule 12(b)(6), a court may generally only consider factual allegations contained within the "four corners" of the complaint. *Morgan v. Swanso*n, 659 F.3d 359, 401 (5th Cir. 2011).[3] Under the Fifth Circuit's exception to this general rule, however, a court may consider extrinsic documentary evidence in the context of a Rule 12(b)(6) motion if: (1) the document is attached to a defendant's motion to dismiss; (2) the document is referred to in the plaintiff's complaint; and (3) the document is "central" to the plaintiff's claims. *Collins*, 224 F.3d at 498–99.

Although the first two elements of the *Collins* exception are easily determinable, the Fifth Circuit has not articulated a test for determining when a document is "central to a plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). Lower courts interpreting this element have defined it to include only those documents "necessary to establish an *element* of one of the plaintiff's claims." *Kaye*, 453 B.R. at 662 (emphasis added); *see also In re Katrina Canal Beaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (noting that a court may consider at the motion to dismiss stage

---

[3] While Rule 12(d) permits a court to consider evidence outside the pleadings, it requires that the motion to dismiss first be treated as and converted to a motion for summary judgment under Rule 56. Here, the instant Motions filed by the Defendants have not been treated as or converted to a motion for summary judgment under Rule 12(d).

those contracts central to the plaintiff's breach of contract suit). Thus, documents used to support a defendant's affirmative defense appear not to fall within the exception.

Here, the SAIL Motion included the following extrinsic documentary evidence for the Court's consideration: (1) Press Release by SAIL Capital from February 12, 2014 ("Press Release"); and (2) City of Austin Police Retirement System Minutes of the Regular Meeting on December 19, 2012 ("APRS Minutes") *See* SAIL Motion, Ex. A–B (dkt# 52-1, 52-2). In doing so, SAIL argued that the Court could consider such documents because they were (1) "partially quoted and referred to in the [Amended] Complaint" and (2) apparently central to the Plaintiff Trust's claims. *See* SAIL Motion, p. 3 n.2. The Plaintiff Trust understandably objected, arguing that both documents arose outside the four corners of the Amended Complaint and that neither was central to the Plaintiff Trust's Amended Complaint. *See* Response to SAIL, p. 5 n.5.

After reviewing both documents, the Court concludes that it can properly consider only the Press Release in the context of Rule 12(b)(6). The Plaintiff Trust explicitly refers to the Press Release in the Amended Complaint through the use of selected quotes from the document. *See* Amended Complaint ¶¶ 5, 44. Further, the quoted selections appear central to the Plaintiff Trust's claims of misrepresentations by SAIL, thus satisfying the third prong of the *Collins* exception. *See Collins*, 224 F.3d at 498–99; *see also In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 3d 860, 882 (S.D. Tex. 2001) (stating a court may consider the full text of documents partially quoted in the complaint when ruling on a 12(b)(6) motion; *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016) (noting that even under Rule 12(b)(6) a "plaintiff may not reference certain documents outside the complaint and at the same prevent the court

from considering those documents' actual terms") (citations omitted). Thus, the Press Release falls within the *Collins* exception to the general rule barring extrinsic evidence in a motion to dismiss.

The APRS Minutes, on the other hand, do not. Although the Amended Complaint alleges facts that can be found in the APRS Minutes, it neither quotes nor explicitly refers to the document in question. *See* Amended Complaint ¶ 44. The Court recognizes that the APRS Minutes, like many other potential documents, may shed some light on the issues at play in the Amended Complaint. At this Rule 12(b)(6) stage of the proceeding, however, it is not appropriate to consider this document. *See Collins*, 224 F.3d at 498–99.

### C. Judicial Notice

A court may take judicial notice of relevant facts in the context of a Rule 12(b)(6) motion. Under Rule 201(b)(2) of the Federal Rules of Evidence ("FRE"), a court may judicially notice a fact not subject to reasonable dispute when the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may take judicial notice of "public disclosure documents required by law to be filed." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Judicial notice may also occur at any stage of a proceeding. Fed. R. Evid. 201(d). In applying FRE 201(d), the Fifth Circuit has permitted lower courts to take judicial notice at the motion to dismiss stage of a proceeding. *See, e.g.*, *Dorsey*, 540 F.3d at 338 (recognizing that a court may rely on "matters of which a court may take judicial

notice"); *Think3, Inc. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 171 (Bankr. W.D. Tex. 2015).

In this case, both parties have asked the Court to take judicial notice of certain facts or documents. *See* SAIL Motion, pp. 15–16; Response to SAIL, p. 6 n.6. Specifically, SAIL has asked the Court to take judicial notice of the Certificate of Incorporation of Xtreme Power Inc., as amended and restated in its several versions ("Xtreme Certificate") *See* SAIL Motion, Ex. C (dkt# 52-3). The Plaintiff Trust, on the other hand, has requested the Court judicially notice ongoing proceedings out of the Superior Court of the State of California, County of Los Angeles captioned *The Veritas Fund v. Sail Venture Partners, LLC* ("Veritas Suit"). *See* Response to Motion, p. 6 n.6.

Turning first to SAIL's request, the Xtreme Certificate is a public document filed with the Delaware Secretary of State. The document bears a government seal or signature, and its accuracy cannot be reasonably questioned. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 959 F. Supp. 2d 476, 496 (S.D.N.Y. 2013) (finding that permits bearing a government seal could be judicially noticed in the context of Rule 12(b)(6)). Accordingly, the Court may take judicial notice of the Xtreme Certificate.

As to the Veritas Suit, only some aspects of the suit are appropriate for the Court to consider. A court may properly take judicial notice of the fact that related litigation or filings exist in a different forum. It may not, however, judicially notice the facts alleged in the other court's pleadings. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998); *see also Kaye*, 453 B.R. at 664–65 ("When a court takes judicial notice of . . . . documents from another court, it may only take notice of the undisputed facts therein,

which do not include the 'facts' asserted in various affidavits and depositions."). Therefore, although it fails to see the value in this request, the Court will judicially notice the fact that the Veritas Suit exists. The Court will not take judicial notice of any references to the factual allegations or pleadings from that suit.

## IV.
## BREACH OF FIDUCIARY DUTIES (COUNT 1)

Count 1 of the Amended Complaint is based on the alleged "breach of fiduciary duty and gross negligence" owed to Xtreme by all the Defendants, including alleged breaches of the duties of loyalty, good faith, and care. In this Count, the Plaintiff Trust claims self-dealing, bad faith, and gross negligence by the Defendants.

The Defendants seek dismissal of Count 1 of the Amended Complaint under Rule 12(b)(6) for a flurry of reasons, including lack of sufficient and plausible factual allegations to support the claim, the business judgment rule, and an exculpatory provision contained in the Xtreme Certificate.

The Defendants also seek dismissal of the Plaintiff Trust's claims on the basis that the Plaintiff Trust has failed to allege that an actual "transaction" took place. *See* Directors Motion, pp. 1–2; SAIL Motion, p. 1. Under Delaware law, however, inaction may also serve as the basis of breach of fiduciary duty liability. *Hubbard v. Hollywood Park Realty Enters.*, No. 11779, 1991 WL 3151, at *257 (Del. Ch. Jan. 14, 1991) (*citing Moran v. Household Int'l, Inc.*, 500 A.2d 1346, 1354 (Del. 1985)) (unpublished opinion); *see also Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 204–05 (Del. Ch. 2006) (considering liability of board for a "failure to act" claim). Accordingly, the "transaction" analyzed for the purposes of the breach of fiduciary duty claims relates to the Director Defendants' alleged failure to liquidate Xtreme in a more timely fashion.

17

As Xtreme is a Delaware corporation, Delaware law governs the duties of the directors. Under Delaware law, directors may be liable for breaching two fiduciary duties to the corporations which they manage—the duty of loyalty and the duty of care. *See Quadrant Structured Prods. Co. v. Vertin*, 115 A.3d 535, 549 (Del. Ch. 2015). The aftermath of *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27 (Del. 2006) and *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362 (Del. 2006) relegated the lesser developed "duty of good faith" as a subset of the duty of loyalty.

A. **Breach of Fiduciary Duties by the Director Defendants**

1. **Duty of Loyalty**

Count 1 of the Amended Complaint alleges a breach of the duty of loyalty by the Director Defendants. Amended Complaint ¶ 50–53. The duty of loyalty requires directors to place the best interests of a corporation above any self-interest held by a director and not shared by all stockholders generally. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Delaware law presumes that directors always act in a loyal manner. *Cede & Co.*, 634 A.2d at 364; *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002). To rebut this presumption, a plaintiff must allege facts indicating that the individual directors were either interested in the transaction at issue or lacked independence to oppose its consummation. Without proof of interest or lack of independence, courts refrain from finding a breach of the duty of loyalty. *Orman*, 794 A.2d at 22–23.

The Delaware Supreme Court defines "interest" in the context of the duty of loyalty to mean "that directors can neither appear on both sides of the transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as

opposed to a benefit which devolves upon the corporation or all stockholders generally." *Orman*, 794 A.2d at 23 (*quoting Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253–54 (Del. 2000)). Absent self-dealing, evidence of a personal benefit accruing to a director will not establish disloyalty unless the director has a "material" self-interest in the transaction. Materiality exists when the alleged benefit is significant enough to make it improbable that the director can perform its duties without being influenced by an overriding personal interest. *Orman*, 794 A.2d at 23 (*citing Cede & Co.*, 634 A.2d at 363). The inquiry takes a subjective approach, evaluating materiality in the context of a director's individual economic circumstances. *Orman*, 794 A.2d at 23; *see Reed v. Linehan (In re Soporex, Inc.)*, 463 B.R. 344, 393 (Bankr. N.D. Tex. 2011) (applying Delaware law) ("In other words, to be disqualifying, the nature of the director interest must be substantial, not merely incidental.").

"Independence," on the other hand, requires that a director consider only the corporate merits of the transaction, ignoring any personal or extraneous considerations or influences. *Cede & Co.*, 634 A.2d at 362. This inquiry asks not whether the director has derived some benefit from the transaction, but rather whether the director's decision resulted from the director being controlled by another. *Orman*, 794 A.2d at 24. Control arises in two contexts. First, control exists where another entity or individual dominates the director, either through a close personal or familial relationship or by force of will. Past business relationships alone will not suffice. *Orman*, 794 A.2d at 27. Second, control occurs when circumstances show that the director is beholden to the other entity or individual. A director is beholden to another when the allegedly controlling individual

or entity has "the unilateral power (whether direct or indirect through control over other decision makers) to decide whether the challenged director continues to receive a benefit" of such subjective material importance that the threatened loss of such a benefit creates doubt as to whether the director can approach the corporate merits of the transaction objectively. *Orman*, 794 A.2d at 24 n.50; *see Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (stating a transaction lacks independence when directors are so beholden to another that "under their influence [the director's] discretion would be sterilized").

No one set of facts will denote disloyalty. Rather, courts decide questions of interest and independence "only after considering all the facts alleged on a case-by-case basis." *Orman*, 794 A.2d at 23; *see Cede & Co.*, 634 A.2d at 364. For example, in *In re KKR Financial Holdings LLC Shareholder Litigation*, the Delaware Court of Chancery considered the independence of a board of directors facing liability for breach of the fiduciary duty of loyalty following a merger. 101 A.3d 980 (Del. Ch. 2014). There, the *KKR* court concluded that in the context of a 12(b)(6) motion, the plaintiff's allegations that a director (Hazen) served as a senior advisor to the acquiring corporation as well as a chairman of an affiliate of the acquiring corporation, were sufficient to allow the court to reasonably infer that the director lacked independence. 101 A.3d at 995–96.

What was not enough to suggest a lack of independence, however, was the naked allegation of a past business relationship of a different director with Hazen. In reaching this conclusion, the *KKR* court rejected plaintiff's transitive theory that a director allegedly beholden to an interested or non-independent director is automatically

interested or non-independent as well. *In re KKR Fin. Holdings*, 101 A.3d at 997–98; *see also In re MFW S'holders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013) ("Our law is clear that mere allegations that directors are friendly with, travel in the same social circles, or have past business relationships with the proponent of the transaction or the person they are investigating, are not enough to rebut the presumption of independence."), *aff'd sub nom.*, *Kahn v. M&F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

Similarly, in an unpublished opinion, the Delaware Court of Chancery also determined that claims of service on the advisory board of a controlling shareholder, standing alone, would not lead to a reasonable inference of breach of the duty of loyalty. *See Shandler v. DLJ Merch. Banking, Inc.*, No. 4797-VCS, 2010 WL 2929654, at *12 (Del. Ch. July 26, 2010) (unpublished opinion). The *Shandler* court noted that without additional allegations that the director received compensation for his service on the advisory board or that the director viewed his service on the advisory board as a material benefit, the court could not infer a lack of directorial independence. Rather, the pled fact of his service alone failed to create a reasonable inference that the director had breached his duty of loyalty by acting in bad faith to injure the corporation. *See Shandler*, 2010 WL 2929654, at *12.

The frequent issue of compensation and its role in director independence produces less consistent judicial results. As noted in *Orman*, a director who considers his role as a corporate officer to be material may be beholden to an individual who has the power to threaten that employment position. *See* 794 A.2d at 25 n.50. Typically, officers consider the compensation from one's employment as material. *See In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 46 (Del. Ch. 2013); *In re Primedia Inc. Derivative*

*Litig.*, 910 A.2d 248, 261 n.45 (Del. Ch. 2006). Accordingly, several Delaware courts have recognized that "directors who are corporate employees lack independence because of their substantial interest in retaining their employment." *In re NutriSystem, Inc. Derivative Litig.*, 666 F. Supp. 2d 501, 515 (E.D. Penn. 2009) (analyzing Delaware case law). Nonetheless, some courts will not find a lack of independence in a director unless a plaintiff also alleges facts showing threats of adverse action or other indicators of undue influence by a controlling director. *See In re NutriSystem, Inc.*, 666 F. Supp. 2d at 515–16 (approaching question of independence under the more particularized pleadings standard of Federal Rule of Civil Procedure 23.1).

Here, the Plaintiff Trust has alleged that the Director Defendants acted in a self-interested manner by not immediately seeking the liquidation of Xtreme in the fall of 2012 after receiving a demand by Langara to do so. *See* Amended Complaint ¶ 41; Response to Directors, p. 11. Thus, to rebut the presumption of director loyalty, the Plaintiff Trust needed to allege sufficient well-pled facts to establish a plausible claim that the individual directors were either interested in the delayed filing of bankruptcy or lacked the independence necessary to oppose the delay.

### a. Directors Schindler and Habicht

The Plaintiff Trust alleges that Directors Schindler and Habicht breached their duties of loyalty by engaging in a concerted plan of non-action aimed at delaying the liquidation of Xtreme. *See* Amended Complaint ¶ 41; Response to Directors, p. 11. According to the Amended Complaint, as managing partners of SAIL, Directors Schindler and Habicht had material self-interests in delaying the liquidation of Xtreme to

avoid, for as long as possible, the corresponding "material reduction in the net asset value of the SAIL funds as a whole." *See* Amended Complaint ¶ 28, 43.

Taking all of the Plaintiff Trust's factual allegations as true and providing all reasonable inferences in favor of the Plaintiff Trust, the Court concludes that a plausible claim exists under Count 1 that Directors Schindler and Habicht breached their duty of loyalty. The delay in liquidating Xtreme was alleged to be a self-interested transaction that provided a material benefit to the two directors, thus rebutting the presumption of director loyalty for the purposes of Rule 12(b)(6).

Significant in this context, the Plaintiff Trust alleges that Director Schindler was the majority owner of SAIL. In this position he acted as a managing partner, co-managing all aspects of SAIL operations and investments. Similarly, Director Habicht served as a managing partner of both SAIL and a SAIL subsidiary. *See* Amended Complaint ¶ 28. From these facts, one could reasonably infer that both Directors Schindler and Habicht had a significant personal interest in the continued well-being of SAIL finances and investments. *Cf. In re KKR Fin. Holdings*, 101 A.3d at 995–96 (finding sufficient facts alleged to raise a plausible claim that a director that also played a significant role in the acquiring corporation was not disinterested or independent).

As SAIL's investment in Xtreme allegedly represented a hefty 30% of the entire SAIL fund's investments, declines in the value of Xtreme would plausibly lead to similar declines in the value of SAIL. *See* Amended Complaint ¶ 43. Correspondingly, declines in the value of SAIL could reasonably lead to a reduction of income to Directors Schindler and Habicht. As such, a plausible inference follows that Directors Schindler and Habicht could have had a material interest in the decision not to liquidate or

restructure Xtreme in a more timely fashion. *See* Amended Complaint ¶ 5. *But cf.*

*Shandler*, 2010 WL 2929654, at *14 (noting the lack of rationality in the assumption that

a shareholder, who would also lose from a diminishment of a company's value, would

purposefully engage in action or non-action it knew would diminish said value)

    While such a scenario seems somewhat unlikely, under Rule 12(b)(6) a plaintiff

needs only to plead a plausible, not probable, cause of action. For these reasons, the

Court will deny the request for dismissal of Count 1 based on breach of the duty of

loyalty by Directors Schindler and Habicht.

### b. Director Duncan

    Along the same lines, the Amended Complaint alleges that Director Duncan

breached his duty of loyalty to Xtreme. As with Directors Schindler and Habicht, the

Amended Complaint alleges that Director Duncan's role as managing partner of a

SAIL-fund affiliate led to a disabling self-interest that caused him to place the needs of

SAIL above those of Xtreme. *See* Amended Complaint ¶ 28, 43.

    The Court concludes that a plausible claim exists under Count 1 as to Director

Duncan's breach of the fiduciary duty of loyalty. Based on the pled fact that Director

Duncan held a significant position in a SAIL affiliate, a reasonable inference follows that

the position would likely cause him to feel concern for the overall financial health of the

SAIL fund. Accordingly, he too could plausibly have had such a material financial

interest in SAIL's economic success as to render him disinterested in any Xtreme

action, or non-action, affecting SAIL. *See* Amended Complaint ¶ 5, 28.

    Although this chain of inferences stretches at the bounds of what is "reasonable,"

the standard of Rule 12(b)(6) requires a Court to only determine whether a claim is

plausible, not whether a plaintiff will ultimately prevail. Under such a liberal standard, this Court concludes that, taking the facts pled in the light most favorable to the Plaintiff Trust, it is plausible that Director Duncan had a material self-interest in the transaction at issue that caused him to breach his duty of loyalty to Xtreme. For these reasons, the Court will deny the request for dismissal of Count 1 based on the breach of the duty of loyalty by Director Duncan.

### c. Director Gotcher

Turning next to Director Gotcher, the Plaintiff Trust alleges in the Amended Complaint that Director Gotcher's lack of independence from SAIL resulted in the breach of his duty of loyalty to Xtreme. Unlike the previous directors, the Amended Complaint alleges no direct connection between Director Gotcher and SAIL. Rather, the Amended Complaint asks the Court to infer that SAIL effectively controlled Director Gotcher through Directors Schindler and Habicht's role on Xtreme's compensation committee. *See* Amended Complaint ¶ 28.

Based on the facts alleged, the Court concludes that a plausible claim exists under Count 1 as to Director Gotcher's breach of the fiduciary duty of loyalty. To rebut the presumption of loyalty on the basis of a lack of independence of Director Gotcher, the Plaintiff Trust needed to allege three things: (1) that Director Gotcher considered his role as Xtreme's president material; (2) that Directors Schindler and Habicht, through their roles on the compensation committee, had the ability to threaten Director Gotcher's corporate role; and (3) that Directors Schindler and Habicht (who were managing partners of SAIL), would actually act in such a manner.

Accepting all facts as true and construing the allegations in the light most favorable to the Plaintiff Trust, the Amended Complaint plausibly alleges these three points. First, the Amended Complaint alleges that Director Gotcher served as the President of Xtreme. Additionally, it states that Xtreme had a compensation committee and that Directors Schindler and Habicht held two of the three membership spots on this committee. Finally, it alleges that Directors Schindler and Habicht both act as managing partners for SAIL, in addition to their roles at Xtreme. *See* Amended Complaint ¶ 28. Based on these three factual allegations, the Amended Complaint asks the Court to infer that, while acting on behalf of SAIL, Directors Schindler and Habicht used their roles on the compensation committee to effectively control Director Gotcher. *Cf. In re Trados Inc. S'holder Litig.*, 73 A.3d at 46 (noting that corporate officers typically view their compensation from employment as material).

Once again the sheer scarcity of facts pled in the Amended Complaint makes these inferences tug at the bounds of "reasonable." Presumably, the Plaintiff Trust reviewed the books and records of Xtreme prior to filing the Amended Complaint. *See* Second Amended Plan § 6.07 (case no. 14-10096, dkt# 897). Yet, the Amended Complaint is devoid of facts relating to the materialness of Director Gotcher's pay as president of Xtreme. *See Orman*, 794 A.2d at 23 (taking a subjective approach to questions of materialness in the context of the duty of loyalty). Nor does the Amended Complaint indicate that the compensation committee had the unilateral power to decide either Director Gotcher's compensation package or his terms of continued employment with Xtreme. *See Orman*, 794 A.2d at 24 n.50. Finally, the Amended Complaint lacks

any facts to illustrate the allegation that Directors Schinder and Habicht used their role on the compensation committee to act on behalf of SAIL.

Given the dearth of facts, the Court can do little but wonder whether inferences and allegations are all the Plaintiff Trust has against Director Gotcher. But at this stage of the proceeding and in light of the standard for a Rule 12(b)(6) motion, the Court has little choice but to conclude that the Plaintiff Trust has alleged sufficient plausible facts to allow the Court to draw a reasonable inference of possible director liability. Accordingly, at this time the Court will deny the request for dismissal of Count 1 based on breach of the duty of loyalty by Director Gotcher.

### d. Director Tashjian

Moving to Director Tashjian, the Plaintiff Trust alleges through the Amended Complaint that this director lacked independence from SAIL such that he could not fulfill his duty of loyalty to Xtreme. Specifically, the Amended Complaint maintains that due to Director Tashjian's alleged position on a SAIL Capital Advisory Board, along with his role as a managing partner of a second, unrelated company SAIL invested in, he lost his independence from SAIL and could no longer act with loyalty to Xtreme. *See* Amended Complaint ¶ 28.

Here, the Court concludes that the Plaintiff Trust has failed to plead sufficient facts in the Amended Complaint to support a plausible claim under Count 1 for breach of the duty of loyalty against Director Tashjian. Even giving all reasonable inferences to the Plaintiff Trust, the two facts pled do not support an inference of lack of independence on the part of Director Tashjian.

As a matter of law, incidental or past business relationships among parties do not give rise to an inference of control. *See Rales*, 634 A.2d at 936. Director Tashjian had no relationship with SAIL outside of business. Moreover, his business relationship with SAIL was limited to service on an advisory board and to SAIL's status as a shareholder of an unrelated company that Director Tashjian happened to manage. *See* Amended Complaint ¶ 28. As seen by the decision in *Shandler*, Director Tashjian's service on the advisory board of SAIL, standing alone, could not establish such a lack of independence from SAIL so as to constitute disloyalty. 2010 WL 2929654, at *12. Along the same lines, his role in the unrelated company that SAIL happened to hold stock fails to give rise to an inference of dominance or control. *See Orman*, 794 A.2d at 24, 27. Finally, unlike Director Duncan, Director Tashjian held no significant position in any SAIL affiliate fund.

Thus, contrary to the conclusory statements made by the Plaintiff Trust, the Court finds that Director Tashjian's tangential business relationships with SAIL did not make him beholden to the fund or freeze his own discretion as an Xtreme director. *Cf. Rales*, 634 A.2d at 936. For these reasons, the Court will grant Director Tashjian's request for dismissal of that portion of Count 1 relating to his alleged breach of the duty of loyalty. Count 1 of the Amended Complaint (to the extent it asserts a breach of the duty of loyalty by Director Tashjian) will be dismissed.

### e. Directors Padval and Wood

Turning finally to Directors Padval and Wood, the Plaintiff Trust alleges in the Amended Complaint that Directors Padval and Wood were at all times independent directors. *See* Amended Complaint ¶ 28. Additionally, the Plaintiff Trust concedes that

neither of these two directors took the action, or lack thereof, that forms the basis of its breach of the duty of loyalty claim. *See* Amended Complaint ¶ 41 (charging "SAIL Defendants" with acting in a self-interested manner); Amended Complaint Preamble (defining "SAIL Defendants" to include only Directors Schindler, Habicht, Duncan, Tashjian, and Gotcher).

Accordingly, the Plaintiff Trust has pled no facts from which the Court can infer an interest or lack of independence that would rebut the presumption of loyalty as to these two independent directors. Furthermore, the Plaintiff Trust has pled no breaches of the duty of loyalty by these two directors. Therefore, the Court will grant Directors Padval and Wood's request for dismissal of that portion of Count 1 relating to their breach of the duty of loyalty. Count 1 of the Amended Complaint (to the extent it asserts a breach of the duty of loyalty by Directors Padval and Wood) will be dismissed.

### 2. Duty of Good Faith/*Caremark* Claims

Count 1 of the Amended Complaint also alleges a breach of the duty of good faith by the Director Defendants. *See* Amended Complaint ¶¶ 51–55. The duty of good faith exists as a subset of the larger duty of loyalty. *Stone*, 911 A.2d at 369. It operates to hold directors liable for actions taken in bad faith or in intentional dereliction of one's duties. As such, it goes beyond the duties of care and loyalty, which primarily analyze a director's conduct, and instead focuses on a director's state of mind. *See In re Think3, Inc.*, 529 B.R. at 178; *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 653 (Del. Ch. 2008). Because of the element of scienter involved, establishing a breach of this duty is more difficult for a plaintiff than rebutting the presumptions of the business judgment rule. *In re Think3, Inc.*, 529 B.R. at 178 (applying Delaware law); *see also Stanziale ex*

*rel. Tower Air, Inc. v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005)

("Overcoming the presumptions of the business judgment rule on the merits is a near-

Herculean task").

While the Delaware Supreme Court has declined to create a "definitive and

categorical definition of the universe of acts that would constitute bad faith," it has set

forth two scenarios that indicate a failure to act in good faith. *In re Think3, Inc.*, 529 B.R.

at 178; *Disney*, 906 A.2d at 67. The first scenario encompasses instances of subjective

bad faith, defined as "conduct motivated by an actual intent to do harm." The second

involves a director "intentionally fail[ing] to act in the face of a known duty to act."

*Disney*, 906 A.2d at 67. Delaware case law commonly refers to this second scenario as

a "*Caremark* claim." *See In re Think3, Inc.*, 529 B.R. at 179 (citing Delaware law).

Although *Caremark* claims initially included only oversight liability issues arising

from a board's failure to monitor employees for illegal conduct, the Delaware Supreme

Court has since refined the topic. Today, as a predicate for recovery based on a

*Caremark* claim, a plaintiff must show:

> (a) The directors utterly failed to implement any reporting or information
> system or controls; or (b) having implemented such a system or controls,
> consciously failed to monitor or oversee its operations thus disabling
> themselves from being informed of the risks or problems requiring their
> attention.

*Stone*, 911 A.2d at 370. In both instances, imposition of liability requires a plaintiff to

prove that the directors knew of their failures to fulfill their fiduciary obligations. After all,

a vast difference exists "between an inadequate or flawed effort to carry out fiduciary

duties and a conscious disregard for those duties." *Lyondell Chem. Co. v. Ryan*, 970

A.2d 235, 243 (Del. 2009). Delaware courts do, however, permit plaintiffs to show

knowledge by identifying "red flags" that should have alerted directors to potential

problems within the company. *See, e.g.*, *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009).

Newer cases indicate that in recent years plaintiffs have made concerted efforts to expand the scope of a *Caremark* claim to also include claims arising from a duty to monitor "business risk." *See, e.g.*, *In re Citigroup Inc.*, 964 A.2d at 124. For example, in *In re Citigroup, Inc.*, the plaintiffs sought the imposition of liability on the basis of the director defendants' failure to act on certain red flags apparent in the subprime mortgage market. The Delaware court rejected these efforts, remarking instead that the alleged warning signs evidenced not bad faith, but rather that the directors may have made some bad business decisions. *In re Citigroup Inc.*, 964 A.2d at 127–28. Despite this ruling, one Delaware chancery court has recognized as a theoretical possibility that a claim may exist, in the right case, for failure to monitor business risk. *See In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *22 (Del. Ch. Oct. 12, 2011) (unpublished opinion). Such a claim, however, would be extremely difficult to prove. *See In re Think3, Inc.*, 529 B.R. at 180.

Significantly, Delaware courts regularly reject plaintiffs' attempt to equate a known duty or obligation to act with a requirement that a director avoid the "deepening insolvency" of a corporation. Such decisions remain uniform in their rejection of the deepening insolvency claim, regardless of whether the plaintiffs phrase it as a breach of the duty of good faith, of the duty of care, or as its own independent duty. *See, e.g.*, *RSH Liquidating Trust v. Magnacca*, 553 B.R. 298, 313–14 (Bankr. N.D. Tex. 2016) (interpreting Delaware law); *Trenwick*, 906 A.2d at 204–07.

Along the same lines, Delaware courts routinely reject arguments that attempt to impose upon directors a duty to liquidate a company on the request of one or more shareholders. Rather, the courts agree that "[d]irectors are not thermometers, existing to register the ever-changing sentiments of stockholders." *In re Lear Corp.*, 967 A.2d at 655. Instead, Delaware corporate law expects these directors to use their own business judgment to advance the interests of both the corporation and its stockholders. *See, e.g.*, *In re Lear Corp.*, 967 A.2d at 655–56; *Gagliardi v. Trifoods Int'l, Inc.*, 683 A.2d 1049, 1053–54 (Del. Ch. 1996).

Here, the Plaintiff Trust bases its claim for breach of the duty of good faith on the contention that the Director Defendants failed to liquidate Xtreme even after a known duty to act arose. *See* Amended Complaint ¶ 42. In sum, the Plaintiff Trust alleges that the Director Defendants knowingly recognized the business risks facing Xtreme and consciously decided not to act in the company's best interests. In support of this conclusory statement, the Plaintiff Trust points to the formal presentation made by a shareholder (Langara) to the Board in November 2012. *See* Amended Complaint ¶¶ 36–39, 42.

In its demand on the Board, Langara allegedly made several observations about the negative financial situation facing Xtreme. *See* Amended Complaint ¶ 37. For example, Langara noted that the August fire at the company's Hawaii facility had left the corporation "in a very financially vulnerable position." Langara also stated that a decline in bookings and the consistent "vanishing" of promised projects left the company with little in the way of going concern value. As a result of these observations, Langara predicted that "raising financing will prove to be very difficult, if not impossible" going

forward and suggested that it failed to see any indications of serious strategic investor interest on the horizon. *See* Amended Complaint ¶ 37. Accordingly, Langara demanded Xtreme's Board start the company's liquidation "NOW" or risk having "little or no liquidation value in bankruptcy." *See* Amended Complaint ¶ 38.

Even accepting all of these facts as true, the Plaintiff Trust has failed to plead a plausible claim for breach of the duty of good faith by the Director Defendants. The facts pled fail to show that the Director Defendants intentionally or knowingly disregarded a duty to act, and they also fail to establish any sort of obligation on the Director Defendants to act at all. As stated by the courts time and time again, directors have no automatic duty to place an insolvent corporation in bankruptcy to preserve its "immediate value." *Cf. RSH Liquidating Trust*, 553 B.R. at 313–14. This type of deepening insolvency theory presupposes the argument that liquidation is the only option for an insolvent corporation. Yet, Delaware law recognizes that even insolvent companies may, in good faith, pursue other strategies to maximize the value of the business. *Trenwick*, 906 A.2d at 204.

The Amended Complaint also fails to allege any facts to support the theory that the Director Defendants improperly monitored business risk or declined to act on apparent red flags. The pleadings contain no allegations that Xtreme's Board refused to meet; no allegations that the Director Defendants stopped searching for financing options or buyers; and no allegations that efforts to restructure would be futile. The only fact pled—that the Director Defendants did not act in the manner requested by Langara—cannot, as a matter of law, be the basis of a breach of a fiduciary duty. *Cf. In re Lear Corp.*, 967 A.2d at 655 (noting that directors need not cater to the whims of a

single shareholder). While this Court recognizes that discovery has not yet occurred, a complaint cannot rest on bare-bone allegations or conclusory statements unsupported by fact.

For these reasons, the Court will grant the Director Defendants request for dismissal of that portion of Count 1 relating to their breach of the duty of good faith. Count 1 of the Amended Complaint (to the extent it is based on breach of the duty of good faith against the Director Defendants) will be dismissed.

### 3. Duty of Care/Gross Negligence

Adding to the flurry, Count 1 of the Amended Complaint also alleges a breach of the duty of care by the Director Defendants. Delaware law stands on the bedrock principle that the business and affairs of a corporation shall be managed by the directors of the corporation. *In re Trados Inc. S'holder Litig.*, 73 A.3d at 36. As such, in determining whether a director has violated its duty of care, courts should only examine the "rationality of the process employed" by a board. Even if a board decisions results in significant losses, a court should not examine the contents of that decision. *In re Think3, Inc.*, 529 B.R. at 172 (citing *In re Citigroup Inc.*, 964 A.2d at 122, 130). As the Delaware chancery court stated in *In re Citigroup Inc.*, "the mere fact that a company takes on business risk and suffers losses—even catastrophic losses—does not evidence misconduct, and without more, is not a basis for personal director liability." 964 A.2d at 130.

Instead, the duty of care requires directors to make an "informed business judgment" when acting in the interests of the company. *Smith v. Van Gorkom*, 488 A.2d 858, 872–73 (Del. 1985), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d

34

695, 713 n.54 (Del. 2009). This requires that a director consider "all material information reasonably available" when reaching a decision. *In re Soporex, Inc.*, 463 B.R. at 371. Liability only results when the director's actions go beyond the bounds of reason, constituting an act of gross negligence.[4] For this reason, Delaware courts have been "extremely stringent" in finding directors liable for breaching their duty of care. *In re Lear Corp.*, 967 A.2d at 652. This reluctance to find liability applies equally to both solvent and insolvent corporations. *In re Trados Inc. S'holder Litig.*, 73 A.3d at 41 n.15.

Although some cases mention an element of "bad faith" in a duty of care claim, the Delaware Supreme Court has unequivocally stated that grossly negligent actions will not constitute bad faith, and a breach of the duty of good faith will not constitute a grossly negligent action. *See Disney*, 906 A.2d at 64–67. As the Delaware Supreme Court points out, holding otherwise improperly conflates the two individual duties. *Disney*, 906 A.2d at 63. Accordingly, an allegation of an intentional dereliction of fiduciary responsibility in violation of the duty of good faith will not also stand as the basis for a breach of the duty of care claim.

In this case, the Plaintiff Trust bases its breach of the duty of care claim on two theories: (1) the Director Defendants failed to make an informed business judgment because they did not consider the information presented by Langara; and (2) the Director Defendants' failure to liquidate Xtreme in a timely fashion constituted gross negligence. *See* Amended Complaint ¶¶ 4, 40, 53. Addressing each point in turn, the

---

[4] The Amended Complaint lists as a cause of action "Breach of Fiduciary Duty and Gross Negligence." *See* Amended Complaint Count 1. As this Court noted in *Think3*, however, these two theories are indistinguishable under Delaware law, with courts using gross negligence as the standard for a breach of the duty of care. 529 B.R. at 172. Therefore, this Opinion treats the gross negligence claim the same as the breach of the duty of care claim.

Court concludes that the Plaintiff Trust failed to plead sufficient facts to support a plausible claim.

As to the point one, the Plaintiff Trust's argument makes no logical sense. The Amended Complaint first alleges that Langara "formally presented" its concerns to Xtreme's Board in November 2012. *See* Amended Complaint ¶¶ 36–37. The Amended Complaint then immediately backtracks to allege that, notwithstanding this formal presentation to the Board, the Director Defendants failed to consider the information presented. *See* Amended Complaint ¶ 40.

Nothing in Rule 12(b)(6) requires the Court to accept such logically inconsistent and conclusory statements as true. *See Iqbal*, 556 U.S. at 678 (instructing a court to deny conclusory statements presented as factual allegations the presumption of truth). The Plaintiff Trust pled no actual facts indicating that the Director Defendants acted to avoid seeing or hearing Langara's concerns. Similarly, the Plaintiff Trust pled no actual facts indicating the occurrence, or non-occurrence, of a board meeting to discuss the Langara demand. Facts such as these examine the "rationality of the process employed" by a board. Here, the Plaintiff Trust pled no facts regarding the process, focusing instead on the contents of the Director Defendants' decision—to not immediately pursue liquidation of Xtreme. *See* Amended Complaint ¶ 40; *see also In re Lear Corp.*, 967 A.2d at 655 (concluding that the failure of a board to capitulate to the whims of a shareholder does not constitute a breach of fiduciary duty).

The Plaintiff Trust attempts to justify their improper focus by stating that Delaware law recognizes a failure by a board to take action as requested is a "process" subject to scrutiny. *See* Response to Directors, p. 17 (*citing McPadden v. Sidhu*, 964

A.2d 1262 (Del. Ch. 2008)). This Court disagrees. By the Court's reading of *McPadden*, the decision stands for the basic and noncontroversial proposition that a plaintiff must plead facts that, if proven, would show the board acted in a grossly negligent manner by not acknowledging available material information. 964 A.2d at 1270–71. For example, in *McPadden*, the plaintiff referenced specific examples of the board willfully ignoring sources of readily available information. *See* 964 A.2d at 1266–68 (recounting the board's consideration of obviously skewed reports and the board's failure to contact those with other available material information). By comparison, here the Plaintiff Trust references no examples of the Director Defendants turning away from information presented. Rather, the Amended Complaint concedes that some formal presentation of information to the Board occurred. *See* Amended Complaint ¶ 36. Thus, *McPadden* lends no weight to the Plaintiff Trust's claims.

As to point two, the Plaintiff Trust's arguments again must fail. On this point, the Amended Complaint again seeks to hold the Director Defendants liable for the same "intentional dereliction of duty" that forms the basis of its breach of the duty of good faith claim. But, as stated in *Disney*, this type of factual double-dipping is inappropriate and should be ignored. *See* 906 A.2d at 63 (clarifying that the duty of care and the duty of good faith are separate issues that courts should not conflate). Moreover, as the Director Defendants had no duty to immediately liquidate Xtreme to prevent deeper insolvency, they could not have intentionally disregarded a known duty to act. *See RSH Liquidating Trust*, 553 B.R. at 313–14.

For these reasons, the Court will grant the Director Defendants request for dismissal of that portion of Count 1 based on breach of the duty of care and gross

negligence. Count 1 of the Amended Complaint (to the extent it is based on a breach of the duty of care and/or gross negligence by the Director Defendants) will be dismissed.[5]

### 4. Business Judgment Rule

As a final point, the Director Defendants moved to dismiss the breach of fiduciary duty claims on the basis of the business judgment rule. The Plaintiff Trust countered by claiming that the Court should review the Director Defendants' actions under the "entire fairness" standard rather than the more deferential business judgment review. *See* Amended Complaint ¶ 59. At this Rule 12(b)(6) stage, the Court finds that the Plaintiff Trust has sufficiently pled around the presumptions of the business judgment rule.

The business judgment rule provides directors with a set of presumptions that act as both procedural protections and substantive rules of law. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162 (Del. 1995). Procedurally speaking, the rule places on plaintiffs the burden of pleading facts sufficient to rebut the presumption that a director acted in the best interests of a corporation. On a motion to dismiss, this means that the alleged facts must raise a reasonable inference that the board of directors breached either its duty of loyalty or duty of care with regard to the transaction at issue. If a plaintiff fails to satisfy this burden, a court should decline to substitute its judgment for the decision of the board, provided the board's decision can be attributed to any rational business purpose. *Gantler*, 965 A.2d at 706; *see also Quadrant Structured Prods.*, 115 A.3d at 554 (noting that the business judgment rule applies equally to both solvent and insolvent corporations).

---

[5] Because the Court is dismissing that portion of Count 1 relating to the Director Defendants' breach of the duty of care, the Court need not revisit the applicability of the exculpatory charter provision in the context of Rule 12(b)(6). *See* Del. Code Ann. tit. 8, § 102(b)(7) (2015) (exculpating only breaches of the duty of care).

If, on the other hand, a plaintiff pleads facts sufficient to raise a reasonable inference that the defendants breached either their duty of loyalty or duty of care, then the evidentiary burden shifts back to the director defendants to show the entire fairness of the transaction at issue. *Cinerama, Inc.*, 663 A.2d at 1163. Notably, a plaintiff's rebuttal of the presumptions of the business judgment rule will not magically establish substantive liability under the entire fairness standard. *Cinerama, Inc.*, 663 A.2d at 1163. More importantly, a plaintiff's rebuttal of the presumptions of the business judgment rule in a Rule 12(b)(6) context (where all facts pled are accepted as true and all reasonable inferences given to a plaintiff), will also not rebut the business judgment presumption in a later decision on the merits. Instead, it will only preclude defendants from relying on the rule to dismiss the claims under Rule 12(b)(6).

Because the Plaintiff Trust has pled sufficient facts to state a plausible claim for breach of the duty of loyalty as to certain Director Defendants, the Court concludes that the business judgment rule has been rebutted for the purposes of Rule 12(b)(6) only. The Court would emphasize that the Plaintiff Trust has not rebutted the business judgment rule for a decision on the merits. Thus, going forward the entire fairness standard will not automatically apply. Rather, this finding is limited to simply precluding the Director Defendants from relying on the business judgment rule to dismiss the Plaintiff Trust's claims for breach of duty of loyalty.

## B. Breach of Fiduciary Duties by SAIL

As to SAIL, Count 1 of the Amended Complaint alleges a breach of the fiduciary duties owed by a "controlling shareholder." Delaware law provides that only controlling shareholders owe fiduciary duties to the corporations they have invested in. To qualify

as a controlling shareholder, an entity must either (1) own more than 50% of the voting power of the corporation; or (2) exercise actual control over the business affairs of the corporation. *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994).

When the shareholder owns less than 50% of the voting power, actual control *must* be pled. Mere allegations of the potential to exercise control will not suffice. *See, e.g.*, *In re KKR Fin. Holdings*, 101 A.3d at 991; *In re Primedia Inc.*, 910 A.2d at 257. Rather, for a complaint to survive a motion to dismiss, a plaintiff must plead specific facts to support the allegation that the minority shareholder's power is "so potent that independent directors . . . cannot freely exercise their judgment" without fear of retribution. *In re Morton's Rest. Grp. S'holders Litig.*, 74 A.3d 656, 665 (Del. Ch. 2013). Accordingly, a minority shareholder will only owe fiduciary duties, and thus face potential liability for a breach, upon a plaintiff's establishment of actual control. *See Kahn*, 638 A.2d at 1113–14.

Here, the Plaintiff Trust has conceded that SAIL owned less than 50% of the voting stock of Xtreme. *See* Amended Complaint ¶ 27. Thus, to plausibly state a claim for breach of the fiduciary duties owed by a controlling shareholder, the Amended Complaint needed to allege sufficient facts to indicate that SAIL exercised actual dominion and control over the business affairs of Xtreme. It did not succeed.

Remarkably, the Amended Complaint apparently pleads no facts regarding SAIL's exercise of actual control over the Director Defendants. Instead, the Plaintiff Trust attempts to make its case in the same manner it alleges the Director Defendants' breach of fiduciary duties—through tenuous business connections and situations where control could potentially occur. *See* Amended Complaint ¶ 28. For example, the

Amended Complaint alleges that Directors Schindler and Habicht were managing partners of SAIL. It also alleges that at all times these two acted as SAIL's agents. *See* Amended Complaint ¶¶ 28, 61. Notwithstanding the fact that the Amended Complaint fails to even set forth the elements of an agency relationship, much less set forth facts to prove them, these two bare-boned allegations do not establish a pattern of actual control. *See In re Primedia, Inc.*, 910 A.2d at 257.

Similarly, the Amended Complaint indirectly alleges that SAIL controlled Directors Duncan and Gotcher through the force of ongoing business relationships. *See* Amended Complaint ¶ 28. Again, while this potential for control might be enough to plausibly rebut the presumption of director loyalty, it will not suffice to establish the controlling shareholder status of an entity. *See In re KKR Fin. Holdings*, 101 A.3d at 991 (determining that *actual control* is required). Thus, even after accepting all well-pled facts as true in the Amended Complaint and reading them in the light most favorable to the Plaintiff Trust, the Court concludes that the Amended Complaint fails to plausibly allege that SAIL acted as a controlling shareholder of Xtreme. As such, the Court finds that SAIL did not owe a fiduciary duty to Xtreme as a controlling shareholder and therefore cannot be liable for breach.

Setting aside the controlling shareholder issue, the Amended Complaint fails to state a plausible claim for breach of fiduciary duty by SAIL in any event. The only allegations against SAIL contained in the Amended Complaint relate to a series of alleged misrepresentations made. *See* Amended Complaint ¶¶ 43–44. Although the alleged misrepresentations could theoretically serve as a component of a breach of fiduciary duty claim, the statements complained of in this case are not actionable by the

Plaintiff Trust. *See Trenwick*, 906 A.2d at 187 (considering allegations of fraud and misstatements as a component of a fiduciary duty breach).

To establish an actionable claim on the basis of a series of misstatements, a plaintiff must prove that:

(1) the defendant misrepresented or falsely reported facts it had a duty to disclose;
(2) the defendant knew or should have known the falsity of the statement;
(3) the defendant made the statement with the intent of inducing the plaintiff to act or refrain from acting;
(4) the plaintiff acted (or refrained from acting) in justifiable reliance on the statement; and
(5) this action (or non-action) injured the plaintiff.

*Trenwick*, 906 A.2d at 207.

Under Rule 9(b), these types of allegations must be pled with particularity. Fed. R. Civ. P. 9. Specifically, a successful complaint must allege the factual circumstances relating to the "time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentations; and what the person(s) gained from making the misrepresentations." *Trenwick*, 906 A.3d at 207–08. Additionally, the complaint must identify a legal wrong suffered by the person bringing the suit. Thus, even if a claim satisfied both the elements and particularized pleading standard, it would still be non-actionable if brought by the wrong party. *See Gagliardi*, 683 A.2d at 1051 (holding that while a series of alleged misrepresentations may have been actionable by the persons who suffered a loss as a result of advancing funds in reliance on the statements, it was not actionable when complained of by the company or its shareholders).

In this case, the Amended Complaint fails to state a plausible, actionable claim for misrepresentation against SAIL. As a preliminary matter, the Plaintiff Trust lacks

standing to assert this type of misrepresentation claim against SAIL. *Cf. Gagliardi*, 683 A.2d at 1051. This is because SAIL allegedly made misrepresentations **to third parties** in an effort to induce them to invest in the SAIL funds. The Plaintiff Trust does not allege that SAIL made any misrepresentations to Xtreme. Rather, the stated misrepresentations were made to potential third-party investors about the financial condition of Xtreme. *See* Amended Complaint ¶¶ 43–44. Also lacking from the Amended Complaint are any allegations going to an action (or non-action) taken by Xtreme in justifiable reliance on the misrepresentations or to any injury to Xtreme directly caused by the misrepresentations. Thus, based on the allegations in the Amended Complaint, the Plaintiff Trust has no plausible claim against SAIL for the misrepresentations alleged.

Furthermore, the Plaintiff Trust failed to plead its misrepresentation claim with particularity, as is required by Rule 9(b). Although the Amended Complaint alleges the time, place, and content of the allegedly false statements, it fails to plead with particularity any facts indicating what SAIL gained through its actions. Indeed common sense would seem to indicate that SAIL lost both money and reputational value through its actions. *See* SAIL Reply, p. 1 n.1 (noting that, like all other shareholders, SAIL stood to lose a considerable sum by Xtreme's drop in value). Thus, the Plaintiff Trust failed to satisfy the pleading standard required to assert a misrepresentation claim.

For these two independent reasons, the Court will grant SAIL's request for dismissal of Count 1 based on a breach of fiduciary duty by SAIL. First, the Amended Complaint does not plead facts demonstrating that SAIL was a "controlling shareholder." Second, the Amended Complaint does not plausibly allege misrepresentations made by

SAIL that would be actionable by the Plaintiff Trust. As a result, Count 1 of the Amended Complaint (to the extent it asserts a breach of fiduciary duty by SAIL) will be dismissed.

### C. Inducing and/or Aiding and Abetting Breach of Fiduciary Duty

The Plaintiff Trust throws a final snowball at SAIL in Count 1 in the form of an inducing and/or aiding and abetting breach of fiduciary duty claim. *See* Amended Complaint ¶ 54. Under Delaware law, a third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty if the plaintiff establishes (1) the existence of a fiduciary relationship; (2) proof that the fiduciary breached its duty; (3) proof that a non-fiduciary defendant knowingly participated in the breach; and (4) damages proximately caused by the breach. *See, e.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *USA Detergents, Inc. v. Greystone Bus. Credit (In re USA Detergents, Inc.)*, 418 B.R. 533, 546 (Bankr. D. Del. 2009) (applying Delaware law).

To show knowing participation in a board's breach of fiduciary duty, a plaintiff must prove that the non-fiduciary third party acted "with the knowledge that the conduct advocated or assisted constitutes a breach." *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015) (*quoting Malpiede*, 780 A.2d at 1097). This standard requires a plaintiff to prove that an aider or abettor had "actual or constructive knowledge that their conduct was legally improper." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008).

For example, well-pled facts indicating a non-fiduciary third party participated in a board's decision to breach or otherwise caused the board to make the decisions at issue may show knowing participation. *Malpiede*, 780 A.2d at 1098. Similarly, Delaware courts have found the element of scienter met if "the third party knows that the board is

breaching its duty of care and participates in the breach by misleading the board or creating [an] informational vacuum." *RBC Capital Markets*, 129 A.3d at 862 (*citing In re Rural Metro Corp.*, 88 A.3d 54, 97–98 (Del. Ch. 2014). What will not be enough, however, are allegations that a third party's reckless actions ended up assisting in the complained-of breach. Thus, without factual allegations of advocacy or assistance, a claim for aiding and abetting must fail.

Here, the Amended Complaint fails to even lay out the elements of an aiding and abetting claim, much less plead facts in support. Notably, the Amended Complaint pleads no facts showing that SAIL assisted in or advocated for any of the Director Defendants' alleged breaches. Similarly, the Amended Complaint pleads no facts indicating legally improper conduct taken by the shareholder entity SAIL. Rather, the only facts pled that could even remotely support the aiding and abetting claim consist of the business relationships between certain Director Defendants and SAIL. *See* Amended Complaint ¶ 28. While these relationships may be enough to (barely) rebut the presumption of loyalty, they fail to show any sort of knowledge or action taken by SAIL to support an aiding and abetting claim. Even granting the Plaintiff Trust all reasonable inferences, this Court fails to see any allegation of knowing participation by SAIL in any of the Director Defendants' breaches.

Thus, contrary to the conclusory allegations made by the Plaintiff Trust, the Court finds that the Amended Complaint fails to state a claim against SAIL for inducing, aiding, or abetting any breach of fiduciary duty by any of the Director Defendants. For all of these reasons, the Court will grant SAIL's request for dismissal of that portion of Count 1 based on inducing and/or aiding and abetting a breach of fiduciary duty claim

against SAIL. Count 1 of the Amended Complaint (to the extent it asserts an inducing and/or aiding and abetting breach of fiduciary duty claim against SAIL) will be dismissed.

### D. Conclusion—Count 1

In conclusion, the Directors Motion to dismiss Count 1 of the Amended Complaint under Rule 12(b)(6) (breach of fiduciary duties of loyalty, good faith, and care, and gross negligence) will be partially granted and partially denied. The Court will dismiss all of the claims in Count 1 based on breach of the duty of good faith, breach of the duty of care, and gross negligence against all of the Director Defendants. The Court will also dismiss that portion of Count 1 based on breach of the duty of loyalty against Directors Tashjian, Padval, and Wood. As a result, all claims in Count 1 against Directors Tashjian, Padval, and Wood will be dismissed. The Court will not dismiss that portion of Count 1 based on breach of the duty of loyalty against Directors Schindler, Habicht, Duncan, and Gotcher.

Additionally, the SAIL Motion to dismiss Count 1 of the Amended Complaint under Rule 12(b)(6) (breach of fiduciary duties of loyalty, good faith, and care, and inducing and/or aiding and abetting breach of fiduciary duty) will be granted. As a result, the Court will dismiss in its entirety all claims in Count 1 against SAIL.

### V.
### CIVIL CONSPIRACY (COUNT 2)

Count 2 of the Amended Complaint alleges a claim for civil conspiracy against the Director Defendants and SAIL. In short, this Count alleges that both the Director Defendants and SAIL conspired to cause the breaches of fiduciary duties complained of in Count 1. *See* Amended Complaint ¶¶ 56–58. The Defendants seek dismissal of

Count 2 of the Amended Complaint, arguing that the Plaintiff Trust has failed to plead sufficient facts to support a conspiracy claim.

Delaware law defines civil conspiracy as (1) a confederation of two or more persons; (2) who engage in an unlawful act done in furtherance of a conspiracy; (3) that causes actual damages to a plaintiff. *See, e.g.*, *In re USA Detergents*, 418 B.R. at 547 (applying Delaware law). Although technically different from a claim for aiding and abetting, most Delaware courts treat the two as being functionally equivalent. *See, e.g.*, *Malpiede*, 780 A.2d at 1098 n.82; *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986); *In re USA Detergents*, 418 B.R. at 547. The test for liability under a conspiracy theory is a stringent one, turning on proof of a defendant's actual or constructive knowledge of legally improper conduct. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1039 (Del. Ch. 2006).

Allegations of civil conspiracy must also be pled with particularity, even in the context of a motion to dismiss. *See, e.g.*, *Kalmanovitz v. Heileman Brewing Co., Inc.*, 595 F. Supp. 1385, 1400–01 (D. Del. 1984) (collecting cases from Delaware and the Third Circuit). General allegations will not suffice. Instead, a plaintiff must plead facts to address "the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *See Kalmanovitz*, 595 F. Supp. at 1401.

For example, in *In re American Business Financial Services, Inc.*, the trustee's civil conspiracy claim incorporated all the facts pled in the complaint and additionally alleged the following:

142.   The Defendants conspired with each other, and others, in an effort to perpetrate, facilitate, and aid and abet the frauds and other wrongs alleged herein.

143.   The Defendants took substantial overt acts, as aforesaid, in furtherance of the conspiracy alleged herein and are liable for the damage and harm to the Debtor.

144.   As a result of the Defendants' conspiracy, the Debtor suffered the damages previously alleged.

360 B.R. 74, 82 (Bankr. D. Del. 2007). The *American Business* court dismissed the claim under Rule 12(b)(6), noting that generalized allegations such as these do not meet the particularity standard required for a claim of civil conspiracy. *In re Am. Bus. Fin. Servs., Inc.*, 360 B.R. at 82.

Similarly, the court in *Kalmanovitz v. Heileman Brewing Co.*, considered a claim for civil conspiracy that included by reference the preceding paragraphs of a complaint and stated that those paragraphs "give rise to an inference of conspiracy." 595 F. Supp. at 1400–01. There, in dismissing the conspiracy claim, the court held that even if such an inference could be gleaned from the plaintiff's complaint, it would not be a substitute "for the requirement that the circumstances of conspiracy be plead[ed] with specificity." *Kalmanovitz*, 595 F. Supp. at 1401.

Here, the Plaintiff Trust lays out its civil conspiracy claim against both SAIL and the Director Defendants in the same unsuccessful manner as the plaintiffs in *Kamanovitz* and *American Business*. In support of its claim, the Amended Complaint states:

56.   Plaintiff re-alleges each and every allegation contained in the preceding paragraphs.

57.     The Plan Trust sues Walter Schindler, Henry Habicht, Foster Duncan, Lee Tashjian, Alan Gotcher, and SAIL Capital Partners, LLC for state law claims for civil conspiracy.

58.     Such defendants conspired to cause the breaches of fiduciary and other duties by the Board of Director Defendants, and thus engaged in a confederation or combination of two or more persons; performed at least one unlawful act in furtherance of the conspiracy; acted pursuant to a common scheme; and caused actual damage to Xtreme Power.

*See* Amended Complaint ¶¶ 56–58. What are notably missing from this conspiracy cause of action are any facts actually pled in support. Rather, like the plaintiffs in the cases above, the Plaintiff Trust merely recited the elements of the claim and asked the court to infer from said elements an actionable conspiracy. *Cf. Iqbal*, 556 U.S. at 678 (stating that threadbare recitations of the elements of will not save a claim from dismissal). Thus, as did the courts in *Kamanovitz* and *American Business*, this Court concludes that the Plaintiff Trust has failed to state a claim for civil conspiracy against the Director Defendants and SAIL.

In conclusion, for these reasons, the Directors Motion and the SAIL Motion to dismiss Count 2 of the Amended Complaint will be granted. The Court will dismiss in its entirety all claims in Count 2.

## VI.
## <u>MISCELLANEOUS CLAIMS</u>

Finally, under the subheading of "miscellaneous," the Amended Complaint mentions "alter ego" and "agency." Under Delaware law, the doctrine of alter ego may be used to pierce the corporate veil of a company when a plaintiff can show (1) the operation of a company and individual as a single economic entity, and (2) the presence of an overall element of injustice or unfairness. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008); *Official Unsecured Creditors' Comm. of Broadstripe, LLC v.*

*Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 102 (Bankr. D. Del. 2010). In determining whether a single economic entity exists, Delaware courts consider the following factors: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders." *Trevino*, 583 F. Supp. 2d at 528–29.

Here, in support of the alter ego claim, the Amended Complaint merely states as follows:

> 60.    Alter Ego. The SAIL Directors and SAIL were, at all material times, the alter egos of one another.

*See* Amended Complaint ¶ 60. Notably missing from the Amended Complaint are any factual allegations to support this alter ego claim. For example, the Amended Complaint contains no allegations relating to any of the single economic entity factors. Moreover, the Amended Complaint pleads no facts suggesting an overall element of injustice or unfairness. As such, even under the liberal standard of Rule 12(b)(6), this Court can grant no reasonable inferences to the Plaintiff Trust on this claim.

With respect to agency, Delaware law considers the following factors when determining whether an agency relationship exists between a company and its employees: (1) the extent of control the company exercises over the employee's work; (2) the engagement of the employee in a distinct occupation or business; and (3) the belief of the parties as to whether they have created an agency relationship. *See, e.g.,*

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1177 (Del. 2012). Yet, in support of the agency claim, the Amended Complaint states only:

> 61.  <u>Agency</u>. Whenever it is alleged that a defendant entity engaged in an act or omission, such act or omission was engaged in by its officers, agents or other persons having authority to engage in such conduct and such defendant entity is thus liable for the acts of its agents.

*See* Amended Complaint ¶ 61. Similar to the alter ego claim, the Amended Complaint pleads no facts to support this conclusory agency statement. Troublingly, the Amended Complaint does not identify what "entity" and what "agents" engaged in an agency relationship. If the allegation is directed at SAIL as the entity, the only "act or omission" engaged in by SAIL are alleged misrepresentations made to third-party investors. *See* Amended Complaint ¶¶ 43–44. As previously discussed, however, these alleged misrepresentations are not actionable by the Plaintiff Trust. Therefore, this Court again can grant no reasonable inferences to the Plaintiff Trust on this "agency" claim.

Perhaps most tellingly, these miscellaneous agency and alter ego "claims" lack even the re-pleading of "each and every allegation contained in the preceding paragraphs" seen in the prior Counts. Along the same lines, neither claim contains even the threadbare recitation of the elements seen in Count 2. Thus, the Court concludes that the Amended Complaint fails to state a claim for either alter ego or agency. As such, these miscellaneous claims will be dismissed by the Court.

## VII.
## CONCLUSION

In sum, due to the deferential standard of Rule 12(b)(6), the Plaintiff Trust may continue to pursue a claim against four of the eight Defendants (Director Schindler, Director Habicht, Director Duncan, and Director Gotcher) for breach of the duty of loyalty only. The remainder of the Amended Complaint skates on such thin ice that it

must be dismissed under Rule 12(b)(6). As a result, all claims by the Plaintiff Trust against four of the eight Defendants (Director Tashjian, Director Padval, Director Wood, and SAIL) must be dismissed.

Further, the Court will not grant the Plaintiff Trust leave to amend the Amended Complaint (for a second time) to attempt to make plausible those claims dismissed.[6] Here, through the Original Motions to dismiss (filed months ago), the Defendants put the Plaintiff Trust on notice of the myriad pleading deficiencies contained in the Original Complaint. *See* Director Defendants Motion to Dismiss, at 4–18 (dkt# 29); SAIL Motion to Dismiss, at 7–20 (dkt# 27). Yet, a comparison between the Original Complaint and the Amended Complaint filed by the Plaintiff Trust in response to the Original Motions, shows that only minor changes were made by the Plaintiff Trust to its allegations. As a result, the Court concludes that granting the Plaintiff Trust further leave to amend would be futile and result in continued undue delay. *See, e.g.*, *Pierce v. Hearne Indep. Sch. Dist.*, 600 Fed. App'x 194, 200 (5th Cir. Jan. 7, 2015) (*citing Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)) (unpublished opinion); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 402 (E.D.N.Y. 2013).

In conclusion, the Court will dismiss all claims in the Amended Complaint and dismiss all Defendants, ***except for*** the breach of the duty of loyalty claims in Count 1 against Director Schindler, Director Habicht, Director Duncan, and Director Gotcher. The Court will enter separate Orders on the Directors Motion and the SAIL Motion consistent with this Opinion. The Court will also enter an Order requiring the remaining

---

[6] In any event, the Plaintiff Trust has not requested leave to amend the Amended Complaint.

parties to conduct a planning conference and submit a proposed scheduling order so that the discovery stage of this proceeding may commence.

# # #